UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | No. 17-CR-123 (LAP) |
| CARLOS MOTA, | ORDER |
| Defendant. | |

LORETTA A. PRESKA, Senior United States District Judge:

        Before the Court is Defendant Carlos Mota's motion,
pursuant to 18 U.S.C. § 3582(c)(1)(A), for compassionate release
on account of the COVID-19 pandemic.  (See dkt. no. 884.)  Mr.
Mota also requested that his motion be treated as an "Emergency
Motion."  (Id.)  The Government opposed the motion, (see dkt.
no. 890), and Defendant replied, (see dkt. no. 908).  For the
reasons set out below, Defendant's motion is DENIED.

I.    **Background**

        Mr. Mota was a manager and supervisor in the "075" gang, a
large, organized, and heavily-armed drug-dealing group that
controlled Weeks Avenue in the Bronx for nearly two decades.
(See dkt. no. 680 ¶¶ 18-19, 113.)  Mr. Mota oversaw the supply
of significant quantities of crack cocaine, cocaine, and heroin
to other 075 members as well as other dealers on Weeks Avenue,
in the surrounding neighborhood (including the "240" conspiracy
on Monroe Avenue), and elsewhere in the Bronx.  (Id. ¶ 113.)
Mr. Mota worked most closely with members of his own family--

including Merlin Dilone[1]--and maintained several stash houses in the Bronx where he and other co-conspirators would receive, store, prepare, and package drugs for bulk sale to others. (Id.)

Throughout the duration of his extensive drug trafficking, Mr. Mota knew that his co-conspirators and the other individuals to whom he supplied drugs, including Edwin and Rafael Romero,[2] committed numerous acts of violence in furtherance of their drug business.  (Id. ¶ 114.)  Due to his role as a manager and supervisor in the drug supply chain, however, Mr. Mota had fewer contacts with law enforcement than many other 075 members who sold drugs on the street.  (Id. ¶ 115.)

Mr. Mota evaded arrest for more than a year following the March 15, 2017 arrests of many of his co-defendants.  (Id. ¶¶ 126, 132.)  Mr. Mota was finally arrested in March 2018 in Hazelton, Pennsylvania, where he was living with Merlin Dilone, who was also on the run. (Id. ¶ 132.)

On December 19, 2018, pursuant to a plea agreement, Mr. Mota pleaded guilty to one count of conspiring to distribute 28

---

[1] Mr. Dilone pleaded guilty in November 2018 to a racketeering conspiracy charge, for which he was sentenced to thirteen years' imprisonment.  (See dkt. no. 58 in 17-CR-707 (VSB).)  Mr. Dilone also admitted to the fatal stabbing of Eddy Guzman.   (See dkt. no. 34 in 17-CR-707 at 2:16-21.)

[2] On September 16, 2020, the Court denied Rafael Romero's compassionate release application.  (See dkt. no. 834.)

grams and more of crack cocaine, 500 grams and more of cocaine, and 100 grams and more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). (See id. ¶ 15; see also dkt. no. 703 at 1.)  In May 2019, the Court sentenced Mr. Mota to 97 months' imprisonment followed by 5 years' supervised release.  (Dkt. no. 703 at 2-3.)  Defendant is serving his sentence at FCI Fort Dix.

On May 20, 2020, Mr. Mota, who is 51 years old, submitted a request for compassionate release to the Bureau of Prisons (BOP), citing several health conditions, including high blood pressure, bronchitis, and breathing issues.  (See dkt. no. 890-1 at 4.)  The BOP denied his request on May 30, 2020.  (See dkt. no. 890-2.)  On February 3, 2021, the defendant filed the instant application with the Court, citing obesity, coronary artery disease, and a recent heart attack as medical conditions supporting his release.  (See dkt. no. 884 at 1.)

## II.  **Applicable Law**

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018).[3]  Under that provision, the Court may reduce Defendant's

---

[3] A defendant may bring such motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The relevant Guidelines policy statement--Section 1B1.13--counsels that a reduction also is not proper unless "[t]he defendant is not a danger to the safety of any other person or to the community."[4]

With respect to the "extraordinary and compelling reasons" requirement, the application notes to U.S.S.G § 1B1.13 provide three instances where such reasons may exist: (1) the Defendant has a terminal illness or serious medical condition that substantially diminishes his ability care for himself; (2) the Defendant is at least 65 years old, has served 10 years or 75 percent of his sentence, and is experiencing a serious age-related decline in health; or (3) the Defendant's family circumstances have changed such that the Defendant is the only available caregiver for a minor child or incapacitated spouse.[5]

---

[4] U.S.S.G. § 1B1.13; see also United States v. Jordan, No. 1:19-CR-478-GHW, 2020 WL 4195353, at *2 (S.D.N.Y. July 16, 2020) ("The relevant policy statement is U.S.S.G. § 1B1.13.").

[5] U.S.S.G. § 1B1.13 app. n.1(A)-(C).  The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the Defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  Id. at app. n.1(D).

Under the First Step Act, the Court may exercise its
"discretion in determining what are extraordinary
circumstances." United States v. Brooker, 976 F.3d 228, 234 (2d
Cir. 2020).  But a court's finding such circumstances merely
permits a defendant's release--it does not mandate it.  See,
e.g., United States v. Ebbers, 432 F. Supp. 3d 421, 430
(S.D.N.Y. 2020); United States v. Israel, No. 05-CR-1039 (CM),
2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019).  Ultimately,
"[t]he defendant has the burden to show he is entitled to a
sentence reduction." United States v. Lisi, 440 F. Supp. 3d
246, 249 (S.D.N.Y. 2020).

Moreover, even if the defendant establishes extraordinary
or compelling circumstances, the Court must still consider the
§ 3553(a) sentencing factors "to the extent that they are
applicable."  18 U.S.C. § 3582(c)(1)(A).  Those factors include,
inter alia, "(1) the nature and circumstances of the offense and
the history and characteristics of the defendant"; (2) "the need
for the sentence imposed ... to reflect the seriousness of the
offense, to promote respect for the law, and to provide just
punishment for the offense"; and (3) "the need for the sentence
imposed ... to protect the public from further crimes of the
defendant." Id. § 3553(a)(1)-(2).

III.  **Discussion**

Although Defendant has properly exhausted his administrative remedies, 18 U.S.C. § 3582(c)(1)(A), the Court will not order his release.

First, Defendant has not demonstrated "extraordinary and compelling reasons" warranting his release.  While, as the Government recognizes, Defendant's weight is recognized by the Centers for Disease Control and Prevention as an increased risk factor for COVID-19, Defendant does not claim--and his medical records do not indicate--that (1) he has experienced obesity-related distress while in custody or (2) the BOP has failed to monitor or treat his condition.[6]  Indeed, Defendant's claims that he suffers from high blood pressure and coronary artery disease are wholly belied by his medical records, which indicate that he has not been diagnosed with either condition.

Moreover, although Defendant claims to have been hospitalized for a recent heart attack, that characterization is also contradicted by his medical records.  Defendant was admitted to a hospital on September 13, 2019, after complaining of chest palpitations.  (Ex. D at 63.)  A medical examination, however, found no enzymatic markers or other evidence of a heart

---

[6] The Government filed Mr. Mota's medical records under seal--as Exhibits C though F--given the personal and sensitive nature of the information they contain.

attack.  (Id. at 63, 83.)  Rather, the attending physician

determined that Mr. Mota temporarily experienced an irregular

heartbeat.  (Id. at 63.)  Echocardiogram examination and baby

aspirin were recommended, but no further medical treatment was

determined to be necessary.  (Id. at 63, 77, 79.)  Defendant has

suffered no further incident since then.  In sum, Defendant's

medical records show no heart or other conditions--aside from

his obsesity--that place him at greater risk for serious effects

from COVID-19.

Finally, even assuming that Defendant's medical history

places him at an elevated risk of contracting COVID-19, he has,

in fact, already contracted the virus and recovered.  Defendant

tested positive for COVID-19 on January 6, 2021, (Ex. E at 1),

and his medical records show that he complained of no symptoms

during his illness.[7]  Nevertheless, Fort Dix ordered radiological

screenings of Mr. Mota's chest, (id. at 2), which came back

clear.[8]  Accordingly, Defendant has not demonstrated that he is

"suffering from a serious physical or medical condition . . .

---

[7] (See Ex. E at 2 ("IM denies fever/chills, cough, shortness
of breath, fatigue, muscle/body aches, headache, new loss of
taste or smell, sore throat, congestion/runny nose,
nausea/vomiting, and diarrhea.").)

[8] (See id. at 41 ("The cardiomediastinal silhouette is
within normal limits.  Lungs are clear.  No pleural effusions.
Bony elements are within normal limits for age.  No acute
osseous abnormality. . . .  No acute cardiopulmonary
disease. . . .  Heart size normal.").)

that substantially diminishes [his] ability . . . to provide
self-care within the environment of a correctional facility."
U.S.S.G. § 1B1.13 app. n.1(A).

Second, even if Defendant had demonstrated "extraordinary
and compelling reasons" warranting release, the Court still
would not exercise its discretion to release him because doing
so would contravene the § 3553(a) factors.  Defendant's crimes
were very serious and inflicted serious harm on his community.
As the Court observed at sentencing, Defendant was a "manager
and a supervisor in a violent drug trafficking organization."
(Dkt. no. 712 at 14:3-5.)  Defendant "profited mightily" from
the sale of drugs by members of the gang, and "the quantities of
drugs [he] imported" into the community wreaked havoc and sowed
immense suffering.  (Id. at 14:8, 16-17.)  The Court also noted
that Defendant was "old enough to know better" and that,
although "often people age out of criminal conduct," that had
not "happened here."  (Id. at 14:22-24.)

Releasing Mr. Mota after some 38 months of a richly-
deserved 97-month sentence would be inconsistent with the need
both to punish him for his actions and to instill respect for
the law.  Such release would also present a danger to the
community of further criminal conduct by Defendant.  Such a
release would also result in an unwarranted sentencing disparity
in that it would bring Defendant's sentence into line with the

sentences of younger gang members in their teens and early twenties who were not managers or supervisors and did not inflict as much damage on the community as Defendant did.

## IV.  Conclusion

For the reasons stated above, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [dkt. no. 878) is DENIED.  The Clerk of the Court shall mail a copy of this order to Mr. Mota.

**SO ORDERED.**

Dated:     June 14, 2021
           New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge